Gary M. Zadick (MSBN 1686)
UGRIN ALEXANDER ZADICK, P.C.
#2 Railroad Square, Suite B
P.O. Box 1746
Great Falls, MT 59403
Tel.:  (406) 771-0007
Fax:  (406) 452-9360

Attorneys for Plaintiff
GOTHAM INSURANCE COMPANY

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| GOTHAM INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>   vs.<br><br>EMPLOYEE BENEFIT MANAGEMENT SERVICES, INC.,<br><br>       Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT AND RECOUPMENT** |

COMES NOW Plaintiff GOTHAM INSURANCE COMPANY, by and through its counsel of record, and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for declaratory relief and recoupment of defense costs, including attorneys' fees, paid in relation to claims that were not covered or even potentially covered under the insurance policy issued by Plaintiff.  Plaintiff seeks a declaration from the Court that Plaintiff is not obligated under the express terms of the insurance policy described in further detail herein to defend and/or indemnify Defendant Employee Benefit Management Services, Inc. ("EBMS") with respect to class action claims asserted in the action styled *Roose v. Employee Benefit Mgmt. Servs., Inc., et al.*, pending before the Montana First Judicial District Court for Lewis and Clark County as Cause No. BDV-2009-878 (the "*Roose* action").

## THE PARTIES

2.      Plaintiff is a corporation organized and existing under the laws of the State of New York with its principal place of business in the State of New Jersey. Plaintiff is authorized to transact business in the State of Montana.

3.      EBMS is a corporation organized and existing under the laws of the State of Montana with its principal place of business in Yellowstone County, Montana.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 28 U.S.C. §2201 and MCA §27-8-201 for the purpose of construing coverage and determining the parties' rights and obligations under an insurance contract.

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over EBMS because EBMS resides and is present for all legal purposes in the State of Montana, including for purposes of suit and service of legal process, and by virtue of its conduct in the State of Montana.

7.     Venue is appropriate in the District of Montana under 28 U.S.C. § 1391(b) because EBMS resides for all legal purposes in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred in this District.  Venue is also appropriate in the Billings Division of this District under Local Rule 3.2(b).

## FACTS COMMON TO ALL CLAIMS

**A. The Policy**

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                                    PAGE 3

8.      Plaintiff issued professional liability policy number IA10028109 to EBMS for the period September 2, 2009 to September 2, 2010 (the "Policy").  A true and correct copy of the Policy is attached hereto as Exhibit A.

9.      The Policy includes the following relevant provisions, among others:

### Part I.      Insuring Agreements

#### A.      Covered Services

*The Company will pay, on behalf of the Insured,* **Damages** *and associated* **Claim Expenses** *arising out of a negligent act, error, or omission resulting in [a]* **Claim** *for financial loss,* **property damage**, **Advertising Liability**, *or* **Personal Injury**, *even if such* **Claim** *is groundless, false or fraudulent, provided that:*

> 1. *The negligent act, error, or omission took place in the rendering of or failure to render* **Professional Services**; *and,*
> 2. *The negligent act, error, or omission took place in the* **Covered Territory**; *and,*
> 3. *The negligent act, error, or omission took place after the Retroactive Date shown in the Declarations; and,*
> 4. *The* **Claim** *is first made against the Insured and reported to the Company during the Policy Period.*

#### B.      Defense and Settlement

*The Company has the right and duty to defend, subject to the provisions in this Policy and the Limits of Liability, any* **Claim** *to which coverage under this Policy applies.*

*The Company has the right to select defense counsel; provided however, if applicable law allows the Insured to control the selection of counsel because a potential conflict of interest between the Insured and the Company, the Company will provide a list of attorneys or law firms from*

*which the Insured may designate counsel, and the Insured agrees to direct such defense counsel to cooperate with the Company.*

*The reasonable fees and costs incurred by counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in **Claim Expenses**.*

*The Company will not settle any **Claim** without the consent of the Named Insured.  If, however, the Named Insured shall refuse to consent to any settlement recommended by the Company and shalt elect to contest the **Claim** or continue any proceedings in connection with such **Claim**, then the Company shall not be obligated to pay **Claim Expenses** incurred subsequent to such refusal.  Withholding of consent or refusal shall be deemed a refusal. Furthermore, the Company's liability for such **Claim** shall not exceed the amount for which the **Claim** could have been so settled and **Claim Expenses** incurred up to the date of such refusal. Such amounts are subject to the Limits of Liability, of this Policy.*

\*      \*      \*

### Part II.      Exclusions

*This Policy does not apply to any **Claim** or **Claim Expenses**:*

**A.**      *Based upon or arising out of any intentional, willful, criminal, fraudulent, malicious, or dishonest act or omission by an insured; except where the **Claim** also includes allegations of a negligent act, error or omission in the performance of your Professional Services; however, this Policy will not pay any **Damages** or further **Claim Expenses** in the event of an adjudication or admission by an insured that the act or omission was intentional, willful, criminal, fraudulent, malicious, or dishonest.*

. . .

**E.**      *Based upon or arising out of any liability of any type assumed by an insured under a contract or agreement, including breach*

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                                PAGE 5

of an express or implied warranty or guarantee.   This
exclusion does not apply to liability that an insured would have
in the absence of the contract or agreement.

. . .

**Q.**     Based upon or arising out of the return, restitution, disgorgement,
forfeiture or rescission of any personal profit, remuneration or
financial advantage, or monies to which an Insured was not entitled.

. . .

**V.**     [Based upon or arising out of] intentional refusal or failure to
pay or any intentional delay in paying any claim or obligation
arising out of an insurance or benefit contract or plan,
however, this exclusion shall only apply if [I]nsured knew that
the claim or obligation was legitimate and compensable.[1]

\*       \*       \*

**Part III.**     **Definitions**

. . .

**C.**     **Claim** means a written demand for money or services received
by the Insured, including service of suit and including
declaratory judgment actions or the demand for arbitration
proceedings against the Insured

. . .

**E.**     **Damages** means monetary judgment, award or settlement,
except those for which insurance is prohibited by law.
**Damages** does not include punitive or exemplary **Damages**,
fines, penalties, sanctions, taxes, awards or **Damages** that are
multiples of any covered fees, deposits, commissions or

---

[1] Exclusion V is set forth in Endorsement 6 of the Policy.

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                    PAGE 6

*charges for goods or services.* **Damages** *does not include any amounts that represent, or are substantially equivalent to, the return, restitution, disgorgement, forfeiture or rescission of any personal profit, remuneration or financial advantage, or monies to which an Insured was not entitled.*

\*     \*     \*

**Part IV.    Conditions**

. . .

**B.    Prohibition of Voluntary Payments and Settlements by Insured**

*With respect to any* **Claim** *covered under this Policy, the Insured shall not, except at the Insured's own expense, make any payment, admit liability, settle* **Claims**, *assume any obligation, agree to arbitration or any other means of dispute resolution, waive any rights or incur any expenses without prior written approval by the Company.*

**C.    Cooperation Clause**

*The Insured shall cooperate with the Company in the conduct of the investigation and defense of a* **Claim**, *and upon the Company's request, submit to examination and interrogation by the Company representatives, under oath if required, and attend hearings, depositions, and trials, and assist in affecting settlements, securing and giving evidence, and in obtaining the attendance of witnesses. The Insured agrees to promptly tender the defense of any Claim to any other insurer which also has available insurance for a* **Claim** *covered under this Policy.*

. . .

**I.    Actions against the Insurer**

*No action will be taken against the Company unless, as a*

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                           PAGE 7

> *condition precedent, the Insured is in full compliance with all of the terms of this Policy, and until the amount of the Insured's obligations to pay have been finally determined, either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant, and the Company.*

### J.   Non-transferability

> *The Insured's rights and duties under this Policy may not be transferred without the written consent of the Company.*

*     *     *

10.   The limits of liability under the Policy are $2,000,000 for each claim and $2,000,000 in the aggregate for all claims with a $75,000 deductible or self-insured retention applicable to damages and claim expenses.

## B. The *Roose* Action

11.   On September 25, 2009, Kent Roose filed a lawsuit against EBMS in the First Judicial District Court of Lewis and Clark County arising out of EBMS's denial of Mr. Roose's medical claim based on the "Coordination of Benefits" exclusion in the Lincoln County Health Plan.   A true and correct copy of Mr. Roose's complaint is attached hereto as Exhibit B.   Mr. Roose subsequently filed a first, second and third amended complaint against EBMS between September 25, 2009 and August 4, 2011.  Mr. Roose's original claims against EBMS included:  (1) violation of Mr. Roose's right and guarantee to be made whole under Montana law; (2) violation of Montana's Unfair Claim Practices Act; (3) conduct constituting malice and/or fraud; (4) failure to comply with

the duty to investigate and determine whether Mr. Roose had been made whole; (5) illegal reduction of plan benefits; and (6) violation of MCA § 33-18-201 as a result of EBMS's alleged malice and/or fraud.  With respect to the class action component of the *Roose* action, Mr. Roose sought class certification, declaratory and injunctive relief and punitive damages.

12.    EBMS tendered the *Roose* action to Plaintiff for defense.  By letter dated November 16, 2009, Plaintiff accepted the defense of the *Roose* action and informed EBMS that it had retained G. Patrick HagEstad of the Milodragovich, Dale, Steinbrenner & Nygren, P.C. law firm to defend the case.  In doing so, Plaintiff acknowledged that there was the potential for at least partial coverage based on the allegations in the *Roose* action and the facts known at the time of tender.  A true and correct copy of Plaintiff's November 16, 2009 correspondence is attached hereto as Exhibit C.

13.    In its November 16, 2009 correspondence, Plaintiff advised EBMS that certain claims alleged were not covered or potentially covered and it "reserve[d] the right to limit or disclaim coverage if it [was] determined that [EBMS] engaged in any conduct" set forth in the exclusions to coverage under the Policy.  (Ex. C at 2.)  EBMS did not take issue with this reservation.  Plaintiff also (1) reserved the right to assert other grounds for disclaiming coverage under the terms of the Policy that were discovered during the course of the investigation of the facts underlying the claims or discovered in the course of any

civil proceedings, (2) reserved the right to seek judicial resolution of coverage issues be way of declaratory or other legal relief either during the pendency of the underlying claims or upon their resolution and (3) reserved all of its rights under the policy and at law in the event that additional information became available that potentially affected coverage under the Policy. (*Id*. at 3.) Finally, Plaintiff reserved the right to recoup any amounts paid to defend claims that were not potentially covered by the terms of the Policy. (*Id*.) EBMS did not take issue with any of these reservations either.

14.     Subject to its reservation of rights, Plaintiff has defended the *Roose* action continuously since at least November 16, 2009. Conceptually, the *Roose* action included two components: (1) Mr. Roose's individual claims and (2) Mr. Roose's claims on behalf of a putative (and later certified) class of claimants whose policies included illegal provisions that violated their right to be made whole under Montana law. As discussed in further detail, Mr. Roose's individual claims were the subject of a previous coverage dispute between Plaintiff and EBMS based on evidence that established that those claims were excluded from coverage under Plaintiff's insurance policy. Mr. Roose's individual claims were settled on September 28, 2016, leaving only the class claims in the *Roose* action. The coverage action on Mr. Roose's individual claims was subsequently dismissed without prejudice. Meanwhile, the Montana Supreme Court had affirmed class certification for purposes of declaratory and injunctive relief, meaning that

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                                  PAGE 10

those two forms of relief were the only forms of relief available to Mr. Roose and the other class members.  There is no insurance under Plaintiff's policy for such claims because, *inter alia,* they do they constitute covered damages.  Despite the lack of any potential indemnity obligation, of which EBMS was advised, Plaintiff did not withdraw EBMS's defense subject to its obtaining a declaration of no coverage from a court of competent jurisdiction.  This action arises out of the defense of the uncovered class claims and EBMS's settlement of those on March 23, 2018, a settlement that Plaintiff owes no obligation to pay.

## C. Plaintiff Sought Declaratory Relief On The Individual Claims

15.    In May 2015, Plaintiff became aware of certain documentary evidence indicating that Mr. Roose's individual claims against EBMS arose out of intentional, not merely negligent, conduct on the part of EBMS or its agents.  More specifically, the evidence is that EBMS knew as early as June 2008 that Montana's "made whole" rule applied to Mr. Roose's claim and that EBMS was actively trying to "beat[ ]" or "find a way around" the made whole rule.  Accordingly, the evidence was that EBMS committed an intentional tort (and did not merely act negligently) when it denied Mr. Roose's claim and failed to make him whole.  Damages arising out of intentional conduct are not covered under the Policy.

16.   After becoming aware of this evidence in May 2015, Plaintiff became aware of evidence indicating that EBMS had a motive to deny Mr. Roose's claim. Specifically, Mr. Roose filed a motion for sanctions on August 6, 2015 stemming from EBMS's suppression or late production of information relating to its excess carrier or reinsurer -- an EBMS-related entity called Unified Life -- that benefitted financially from the allegedly improper denial of benefits to Mr. Roose. That financial incentive or motive further implies intentional conduct, not negligence, meaning no coverage for defense or indemnity was available under the Policy for Mr. Roose's individual claims.

17.   As a result of this information, on October 5, 2015, Plaintiff filed a complaint for declaratory relief and attorneys' fees against EBMS captioned *Gotham Ins. Co. v. Employee Benefit Mgmt. Servs., Inc.*, Case No. 1:15-cv-00095-SPW.

**D. The Montana Supreme Court Affirms Class Certification**

18.   On November 17, 2015, the Montana Supreme Court affirmed the state district court's certification of the following class in the *Roose* litigation:

> (1) All persons insured through EBMS-administered plans (including JPT plans) dating back eight years before Mr. Roose filed the suit (*i.e.*, statute of limitations for contracts);

> (2) [W]ho, similar to Mr. Roose, have been enrolled in plans containing exclusions which require payment of medical bills by liability carriers before the EBMS plan is required to pay or result in reimbursement of the plan when both the plan and the liability carrier have paid;

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                      PAGE 12

(3) [W]ho, similar, to Mr. Roose, are subject to various systematic practices which implement the subject exclusions; and

(4) excluding plans not subject to Montana law. (*Roose v. Lincoln County Employee Grp. Health Plan*, 2015 MT 324, ¶¶ 39, 42.)

19.    The Montana Supreme Court noted that Mr. Roose's request for class certification was made on behalf of every member of the appellants' -- including EBMS's -- health plans that included an illegal coverage exclusion that served as a basis for EBMS and others to violate their made whole rights under Montana law. *Id*. at ¶ 8. The Montana Supreme Court further noted that Mr. Roose sought actual and punitive damages only as part of his individual claims and that, by contrast, the class action claims did not seek such damages but sought only "declaratory judgment that both the exclusion and [EBMS's] systematic practices violate Montana's made-whole laws" and "an injunction requiring [EBMS] to cease all illegal practices." *Id*. The Montana Supreme Court ordered that the certified class was "entitled to prospective relief only" and that "[a]ny monetary relief granted to individual class members as a result of [the class certification] rulings would occur ***outside the scope of the class action*** and would be incidental to the declaratory and injunctive relief ordered by the district court[.]" *Id*. at ¶ 29 (emphasis added). Declaratory and injunctive relief are not claims or damages potentially subject to coverage under the Policy.

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                          PAGE 13

20.     The Montana Supreme Court also noted that "the [d]istrict [c]ourt has not certified a class for the purposes of restitution." *Id.* Even if a restitution class had been certified, restitution, disgorgement and similar equitable remedies are not claims or damages potentially subject to coverage under the Policy.

**E. Mr. Roose's Individual Claims Are Settled**

21.     Despite the significant issues relating to whether any of Mr. Roose's individual claims could be insured under the Policy given the facts indicating that such claims arose only out of intentional conduct, EBMS and Plaintiff agreed to settle Mr. Roose's individual claims (and the coverage issues relating to those claims) on September 28, 2016.  The terms of the settlement are confidential but it can be disclosed that the class action claims did not settle as part of that mediation and Mr. Roose retained a *de minimis* interest in the class action component of the *Roose* action to permit him to continue serving as the class representative in that litigation.  Thus, after the resolution of Mr. Roose's individual claims, only the class claims for declaratory judgment and injunctive relief remained as part of the *Roose* action.

22.     The prior coverage action between Plaintiff and EBMS necessarily focused on Mr. Roose's individual claims, as the Montana Supreme Court had not yet affirmed the state district court's class certification when the coverage action was filed.  On November 1, 2016 -- following the resolution of Mr. Roose's individual claims but

more than two weeks before the Montana Supreme Court affirmed the certified class --
Plaintiff and EBMS stipulated to dismiss the coverage action without prejudice and
agreed that either party could re-file the coverage action or a new lawsuit that included
the same or similar claims as the coverage action.  The parties also agreed to toll the
statute of limitations with respect to any and all claims or counter-claims that had been
asserted in the coverage action; that is, the statute of limitations for any claims or counter-
claims would not begin to run until one month after the coverage dispute was refiled, if
at all.  Finally, EBMS agreed to "waive[ ] any argument that [Plaintiff] failed to file a
declaratory relief action as a result of (or in any way relating to) the stipulation for
dismissal without prejudice," although EBMS maintained its arguments and claims, if
any, relating to the timing of Plaintiff's complaint seeking declaratory relief in the first
coverage action.

       23.    Plaintiff continued to defend EBMS in the *Roose* action even after the
individual claims were settled because nine years had passed since Plaintiff had accepted
the defense and had Plaintiff had not yet obtained a judicial declaration that no defense
was owed.   However, Plaintiff repeatedly advised EBMS on multiple occasions,
including through the first coverage action, that it had no indemnity or defense
obligations for the class action claims for declaratory and injunctive relief.

**F.  EBMS Settles The Class Action Claims**

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                              PAGE 15

24.    On March 23, 2018, EBMS, defendant Joint Powers Trust, Mr. Roose (on behalf of the certified class only) and Plaintiff participated in a mediation of the class action claims in the *Roose* action.

25.    Without Plaintiff's approval or participation, EBMS entered into a settlement with the certified class (through its representative, Mr. Roose) for $850,000, $400,000 of which would be paid by EBMS with its own funds (not by Plaintiff or the Policy).  On information and belief, the settling parties agreed that the $450,000 balance of the agreed-upon settlement would be funded by the other named defendants in the *Roose* action or their insurers.

26.    The March 23, 2018 settlement extinguished the remaining claims in the *Roose* action; that is, the class action claims for declaratory and injunctive relief and attorneys' fees and punitive damages for such claims.  Thus, there are no claims remaining against EBMS in the *Roose* action and Plaintiff understands that -- after nearly a decade of litigation and a lack of coverage under the Policy for any of the recently settled claims -- the March 23, 2018 settlement represented the intention of all parties involved to finally resolve all disputes relating to the *Roose* action.  Plaintiff files this action to confirm that it has no obligations of any kind to any party with respect to the claims of the certified class that were settled on March 23, 2018 and that Plaintiff is entitled to recoup all amounts that it paid to defend the class action claims.

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                                    PAGE 16

## FIRST CLAIM FOR RELIEF

### *(For Declaratory Judgment)*

27.   Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 26 of this complaint, which are incorporated by reference as if fully set forth herein.

28.   Plaintiff asserts that a justiciable dispute and actual controversy regarding the rights and obligations under the Policy exists between Plaintiff and EBMS or parties that may seek insurance coverage under the Policy on behalf of EBMS with respect to Plaintiff's duty to defend and/or indemnify EBMS in the *Roose* action. Plaintiff contends that it had no obligation to defend or to continue defending EBMS against the claims of the certified class because it had no potential obligation to indemnify EBMS with respect to any such claims.  EBMS, or other parties seeking insurance under the Policy on behalf of EBMS, apparently does, do or may contend that Plaintiff is obligated to defend the class action claims and indemnify EBMS for the $400,000 that EBMS committed toward the settlement of the class claims.

29.   Plaintiff seeks a judicial declaration as to its obligations under the Policy with respect to its duty to defend and/or indemnify EBMS for the class action claims in the *Roose* action.

30.     Pursuant to the Uniform Declaratory Judgments Act, MCA § 27-8-201 and 28 U.S.C. § 2201, a judicial declaration is necessary and appropriate at this time and under these circumstances so that Plaintiff may ascertain its rights and duties under the Policy as they related to the *Roose* action.

31.     Plaintiff is entitled to an order from this Court declaring that it has no duty to defend or indemnify the claims asserted in the *Roose* action.

## SECOND CLAIM FOR RELIEF

### *(For Recoupment of Defense Costs)*

32.     Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 31 of this complaint, which are incorporated by reference as if fully set forth herein.

33.     Where no defense obligation is owed, an insurer may recoup the costs of the defense provided to an insured made under a reservation of rights if the insurer provides timely notice of its right to recoup its costs of defense.

34.     Pursuant to the terms, conditions and exclusions of the Policy, Plaintiff had no defense or indemnity obligation for the class action claims.

35.     Plaintiff timely provided EBMS with notice of its right to recoup defense costs paid in connection with any of the claims or causes of action that are not covered under the Policy in its November 16, 2009 correspondence (*see* Ex. C) and in its

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                    PAGE 18

supplemental reservation of rights letter dated June 19, 2015, a true and correct copy of which is attached hereto as Exhibit D.

36.     Under the facts of this case and the *Roose* class action, which presented claims that were not even potentially covered under the express terms of the Policy, Plaintiff is entitled to recoup the attorneys' fees and costs that it paid in connection with the defense that it provided to EBMS in an amount that exceeds the jurisdictional minimum of the Court and will be established according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.     A declaration pursuant to the Uniform Declaratory Judgments Act, MCA § 27-8-201 and 28 U.S.C. § 2201, that Plaintiff has no duty to defend or indemnify EBMS or any other party with respect to the claims of the certified class in the *Roose* action pursuant to the terms, conditions and exclusions of the Policy;

2.     That Plaintiff may recover the attorneys' fees and costs that it paid in the defending the *Roose* action, particularly the class action claims therein, and other disbursements incurred by Plaintiff from September 28, 2016 through the conclusion of this declaratory judgment action; and

3.     For such other and further relief as this Court may deem just and proper.

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                            PAGE 19

Dated:  April 10, 2018                    UGRIN ALEXANDER ZADICK, P.C.

                                          By:  /s/ Gary M. Zadick
                                               _____
                                               Gary M. Zadick
                                               Attorneys for Plaintiff
                                               Gotham Insurance Company

COMPLAINT FOR DECLARATORY
JUDGMENT AND RECOUPMENT                                        PAGE 20